# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| RAMONA ORELLANA, individually, and on behalf of A.O., a minor, N.O., a minor, and J.O., a minor, | |
| Plaintiff, | Case No.: 6:24-cv-00762-JSS-RMN |
| v. | |
| ROBLOX CORPORATION; APPLE INC.; MICROSOFT CORPORATION; MOJANG AB; SONY INTERACTIVE ENTERTAINMENT LLC; and EPIC GAMES, INC. | Hon. Julie Sneed |
| Defendants. | |

## EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Defendant Epic Games, Inc., hereby moves to compel arbitration of Plaintiff's, N.O.'s, and J.O.'s claims pursuant to the parties' agreement to the Fortnite End User License Agreement (EULA) and the Federal Arbitration Act, as set forth in the accompanying memorandum of law and supporting declaration of David Saunders.

Dated: October 15, 2024

Respectfully submitted,

/s/ Ken Abele
KEN ABELE
Florida Bar No. 0254370
Georgia Bar No. 000377
JONATHAN HAYES
Florida Bar No. 119193
LUKE FORSTHOEFEL
Florida Bar No. 1025400
Ausley McMullen
P. O. Box 391
Tallahassee, Florida   32302
(850) 224-9115
(850) 222-7560 FAX
kabele@ausley.com
jhayes@ausley.com
lforsthoefel@ausley.com

**HUESTON HENNIGAN LLP**

Moez M. Kaba*
Allison L. Libeu*
Padraic Foran*
523 West 6th St., Suite 400
Los Angeles, California 90014
(213) 788-4340
Email: mkaba@hueston.com
        alibeu@hueston.com
        pforan@hueston.com

Adam Minchew*
1 Little West 12th St.
New York, New York 10014
(646) 930-4046
Email: aminchew@hueston.com

* Admitted *pro hac vice*

*Attorneys for Defendant Epic Games, Inc.*

- 2 -

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| RAMONA ORELLANA, individually, and on behalf of A.O., a minor, N.O., a minor, and J.O., a minor, | |
| Plaintiff, | Case No.: 6:24-cv-00762-JSS-RMN |
| v. | |
| ROBLOX CORPORATION; APPLE INC.; MICROSOFT CORPORATION; MOJANG AB; SONY INTERACTIVE ENTERTAINMENT LLC; and EPIC GAMES, INC. | Hon. Julie Sneed |
| Defendants. | |

# EPIC GAMES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION

## INTRODUCTION

In the Amended Complaint, Plaintiff Romana Orellana alleges that N.O. and J.O., her 15- and 13-year-old children, have become "addicted" to Fortnite, a video game developed by Defendant Epic Games, Inc. ("Epic").[1] Before playing Fortnite, N.O. and J.O. agreed to Epic's End User License Agreement ("EULA"), pursuant to which they agreed to arbitrate any dispute that "relates to [their] use or attempted use of Epic's products or services and Epic's products and services generally[.]"[2] Epic respectfully requests the Court order Plaintiff to abide by the agreements and arbitrate this dispute.

*First*, N.O. and J.O. entered into valid arbitration agreements with Epic. As part of playing Fortnite, players agree to the EULA, which includes a broad agreement to

---

[1] The Amended Complaint also alleges that A.O., Plaintiff's 11-year-old child, is addicted to video games but does not allege that A.O. plays Fortnite. Amended Complaint ("Am. Compl.") ¶¶ 386-389 (alleging A.O. plays Roblox and Minecraft but not Fortnite). Accordingly, this motion does not seek to compel arbitration of Plaintiff's claims on behalf of or relating to A.O. To the extent that the Amended Complaint purports to state such claims against Epic, however, they should be dismissed because A.O. does not play Fortnite as well as for the other reasons demonstrated in the Developer Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

[2] Declaration of David Saunders in Support of Epic Games, Inc.'s Motion to Compel Arbitration ("Saunders Decl."), Ex. C (EULA) § 12.3.1. Because Plaintiff's claims relate to N.O. and J.O.'s alleged gameplay, the EULA's arbitration provision covers the claims asserted in the Amended Complaint. *See* Am. Compl. ¶¶ 397-400 (alleging N.O. played Fortnite and was harmed as a result); *id.* ¶¶ 407-411 (alleging J.O. played Fortnite and was harmed as a result).

arbitrate, by affirmatively clicking an "accept" button before being allowed to play the game. N.O. and J.O. each agreed to the EULA four times, including as recently as November 19, 2023. Under well-established law, Plaintiff must arbitrate all claims asserted against Epic. *Mason v. Midland Funding LLC*, 815 F. App'x 320, 322 (11th Cir. 2020) (enforcing arbitration agreement that required plaintiff to "click" to accept its terms because "the consumer is on notice that an agreement exists and receives the opportunity to review the terms of that agreement and to consent").

Plaintiff cannot avoid arbitration merely because N.O. and J.O. are minors. The Florida Supreme Court has expressly held that enforcing arbitration agreements "is not contrary to the public policy of protecting children." *See Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 405 (Fla. 2005). Moreover, agreements entered into by minors are "not void but only voidable" under both Florida and North Carolina law.[3] *Orange Motors of Miami, Inc. v. Miami Nat. Bank*, 227 So. 2d 717, 718 (Fla. 3d DCA 1969); *Chandler v. Jones*, 90 S.E. 580, 581 (N.C. 1916) ("contract of an infant is voidable and not void"). Disaffirmance is thus a defense to a contract's enforceability, but it does not affect the contract's formation. *Off the Wall & Gameroom LLC v. Gabbai*, 301 So. 3d 281, 286 (Fla. 4th DCA 2020) (discussing the "infancy defense"); *K.F.C. v. Snap*

---

[3] The EULA is governed by North Carolina law. (EULA § 11.) Because North Carolina law and Florida law are consistent on the relevant issues, this motion includes citations to authority from both jurisdictions.

*Inc.*, 29 F.4th 835, 838 (7th Cir. 2022) (affirming grant of motion to compel against minor plaintiff because "[a]s long as state law permits a child to ratify a contract, youth must be a defense rather than an obstacle to a contract's formation").

For this reason, a district judge in another case brought by Plaintiff's counsel based on alleged video game addiction recently rejected the argument that a minor lacks the capacity and competency to assent to Epic's EULA. *Dunn v. Activision Blizzard, Inc.,* No. 23-cv-00224, slip op. at 6 (E.D. Ark. Sept. 26, 2024) (ECF 163) ("Because G.D.'s contract is voidable, not void under Arkansas law, G.D.'s infancy and alleged lack of competency do not nullify his agreement."). Accordingly, the court in that case granted Epic's motion to compel arbitration based on facts nearly identical to those alleged here. *Id.* The Court should do the same and find that N.O. and J.O. agreed to arbitrate this dispute.

*Second*, insofar as there is any dispute whether Plaintiff's claims are covered by the arbitration clause, the parties agreed in the EULA that the arbitrator would decide questions concerning the validity, enforceability, and scope of the arbitration agreement. Courts, including the Supreme Court, have made clear that, when such threshold questions are delegated to the arbitrator, the court "possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). Although Plaintiff

alleges that N.O. and J.O. may disaffirm the EULA, any dispute over whether they have effectively done so is a question for the arbitrator, not this Court.

*Third*, even if the Court reaches arbitrability questions delegated to the arbitrator, N.O. and J.O. cannot disaffirm the EULA while continuing to retain the benefits of their agreements. Plaintiff alleges that N.O. and J.O. are addicted to Fortnite such that their "use" is "compulsive" and they are "incapable of restraining themselves" from playing. (Am. Compl. ¶¶ 404, 415.) Epic's records reflect that N.O. and J.O. have used their respective accounts to play Fortnite as recently as October 2024. (Decl. ¶ 19.) N.O. and J.O. have thus retained the EULA's benefits (i.e., continued game play and access to Fortnite) and affirmed, rather than disaffirmed, the arbitration obligation. *See Hunter v. Travelers Ins. Co.*, 131 So. 2d 209, 210 (Fla. 2d DCA 1961) ("[C]ourts will not permit a minor or his personal representative to revoke in part and affirm in part.").

*Fourth*, should the Court determine that any claims against Epic are not arbitrable, the Court should stay the non-arbitrable claims while arbitration with N.O. and J.O. is pending. *See, e.g.*, *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("When confronted with litigants advancing both arbitrable and nonarbitrable claims, . . . courts have discretion to stay nonarbitrable claims [particularly when] arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision.").

For these reasons, the Court should compel Plaintiff to abide by the contractual terms to which N.O. and J.O. agreed and arbitrate their claims.

## **BACKGROUND**

Since Fortnite's launch in the summer of 2017, all players have been required to affirmatively agree to the EULA before they can begin playing the game. (Saunders Decl. ¶ 4.) The player may scroll through the text of the EULA, which is displayed on-screen, and must either accept the EULA by clicking an "accept" button or reject the EULA by clicking a "decline" button. (*Id.* ¶¶ 5-8.)

From time to time, Epic updates the EULA. (*Id.* ¶ 14.) Epic advises players that it may update the EULA at any time: "Epic may issue an amended Agreement . . . at any time in its discretion by posting the amended Agreement . . . on its website or by providing you with digital access to amended versions . . . when you next access the Software." (EULA § 14.) The EULA further advises that "[i]f any amendment to this Agreement . . . is not acceptable to you, you may terminate this Agreement and must stop using the Software." (*Id.*)

Since March 2019, the EULA has included (and still includes) an arbitration agreement. (Saunders Decl. ¶ 9.) Section 12.3.1 of the EULA provides:

> You and Epic agree to submit all Disputes between You and Epic to individual binding arbitration. "Dispute" means any dispute, claim, or controversy (except those specifically exempted below) between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally, including without

> limitation the validity, enforceability, or scope of this
> Binding Individual Arbitration section.
>
> You and Epic agree to arbitrate all Disputes regardless of
> whether the Dispute is based in contract, statute, regulation,
> ordinance, tort (including fraud, misrepresentation,
> fraudulent inducement, or negligence), or any other legal or
> equitable theory.

(EULA § 12.3.1.) In addition to providing for arbitration of all disputes between the parties, the arbitration agreement expressly states that "whether a dispute is subject to arbitration under [the EULA] will be determined by the arbitrator rather than a court." (*Id.* § 12.3.1.) Players may opt out of the arbitration agreement by submitting a written notice to Epic within 30 days of the date on which they first accepted the EULA. (*Id.* § 12.6.)

After Plaintiff filed the Amended Complaint on August 12, 2024, Epic undertook a search of its records to identify Epic Games accounts associated with Plaintiff, N.O., or J.O. (Saunders Decl. ¶ 16.) Epic identified two such accounts. The first account was created on March 10, 2018, using a name with the initials N.O. (the "N.O. Account"). (*Id.* ¶ 17.a.) The second account was created on May 29, 2018, using an email address containing a name with the initials J.O. (the "J.O. Account"). (*Id.* ¶ 17.b.) At the time of their creation, the users of the N.O. and J.O. Accounts affirmatively agreed to the EULA by clicking the "accept" button in the manner described above. (*Id.* ¶¶ 20, 29.)

Thereafter, the users of the N.O. and J.O. Accounts agreed to the EULA, including its arbitration agreement, on March 15, 2019, November 18, 2023, and again on November 19, 2023. (*Id.* ¶¶ 22-27, 31-36.) During the process, the arbitration agreement was prominently called out near the top of the EULA (*id.* ¶¶ 9-10), and the user was required to accept the agreement by clicking "accept" before continuing to play Fortnite (*id.* ¶¶ 4-6).

The users of the N.O. and J.O. Accounts did not submit a request to opt out of the arbitration agreement within 30 days of the date on which they first accepted the EULA. (*Id.* ¶¶ 28, 37.)

## **APPLICABLE LAW**

There is a strong federal policy in favor of arbitration, and courts are required to "rigorously enforce agreements to arbitrate[.]"[4] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The law's "permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (quotation omitted).

In deciding whether to compel arbitration, the court is generally limited to determining two threshold issues: (1) whether there is an agreement to arbitrate

---

[4] The EULA's arbitration agreement is "subject to the U.S. Federal Arbitration Act and federal arbitration law[.]" (EULA § 12.3).

between the parties; and (2) whether the agreement covers the dispute at issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). The court need not (and cannot) reach the second question, however, when the arbitration agreement "clearly and unmistakably" delegates threshold issues such as the scope, validity, and enforceability of the agreement to the arbitrator. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

When an arbitration agreement delegates questions about the scope of arbitration to the arbitrator, the court must honor the parties' agreement. *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022) ("parties are free to have an arbitrator decide their threshold disputes" concerning the "enforceability, scope, or applicability of the parties' agreement to arbitrate their claims" (internal quotation marks omitted)). "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc.*, 586 U.S. at 69. These gateway questions may include determining the validity of the arbitration agreement itself. *Rent-A-Center*, 561 U.S. at 68.

Thus, when an arbitration agreement includes a delegation clause covering validity, enforceability, and scope, the only question for the court is whether an arbitration agreement *exists* between the parties. *Id.* at 69 n.1, 70 n.2 (noting that "[t]he

issue of the agreement's validity is different from the issue whether any agreement between the parties was ever concluded," i.e., whether "it was in fact agreed to" (internal quotation marks omitted)); *accord Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 992 (11th Cir. 2012) ("The issue of the contract's validity is different from the issue whether any agreement . . . was ever concluded." (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)).

## ARGUMENT

### I.   N.O. and J.O. Formed Agreements to Arbitrate All Claims Against Epic

To determine whether the parties entered into an arbitration agreement, federal courts apply state-law principles of contract formation. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 (11th Cir. 2017). Under Florida law, the elements of a valid contract are (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)); *accord Murray v. Deerfield Mobile Home Park, LLC*, 860 S.E.2d 323, 329 (N.C. App. 2021). Under these principles, N.O., J.O., and Epic reached valid agreements to arbitrate.

#### A.   The EULA Conspicuously Provides for Arbitration

The EULA conspicuously notifies those considering whether to agree to the EULA that it contains a binding arbitration clause. Using straightforward language, the

introduction to the EULA "highlight[s]" three "important terms, policies, and procedures," including that:

> You and Epic agree to resolve disputes between us in individual arbitration (not in court). We believe the alternative dispute-resolution process of arbitration will resolve any dispute fairly and more quickly and efficiently than formal court litigation. Section 12 explains the process in detail. We've put this up front (and in caps) because it's important[.]

(EULA intro.) The notice then reiterates, in bolded, capitalized type:

> **THIS AGREEMENT CONTAINS A BINDING, INDIVIDUAL ARBITRATION AND CLASS-ACTION WAIVER PROVISION. IF YOU ACCEPT THIS AGREEMENT, YOU AND EPIC AGREE TO RESOLVE DISPUTES IN BINDING, INDIVIDUAL ARBITRATION AND GIVE UP THE RIGHT TO GO TO COURT INDIVIDUALLY OR AS PART OF A CLASS ACTION . . . .**

(*Id.*) Such prominent displays are routinely held sufficient to bind individuals to arbitration clauses. *See, e.g.*, *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1272 (11th Cir. 2023) (compelling arbitration when terms were not "buried in a maze of fine print"); *Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 301-02 (D. Mass. 2016), *aff'd*, 918 F.3d 181 (1st Cir. 2019) (compelling arbitration when "the arbitration provision is preceded by a clearly-worded, bolded, all-caps header in a font size that is larger than the text of the provision itself").

B.     N.O. and J.O. Agreed to Arbitrate All Claims Against Epic

As discussed above, Epic requires players to affirmatively agree to the EULA before they can begin playing Fortnite. (Saunders Decl. ¶¶ 4-6.) As relevant here, N.O. created an Epic Games account on March 10, 2018, and accepted the EULA that same day. (*Id.* ¶¶ 17.a, 20.) J.O. created an Epic Games account on May 28, 2018, and accepted the EULA that same day. (*Id.* ¶¶ 17.b, 29.) N.O. and J.O. each accepted the EULA three more times—on March 15, 2019, November 18, 2023, and November 19, 2023—including its provision providing for arbitration of all disputes between Plaintiff and Epic "that relate[] to your use or attempted use of Epic's products or services and Epic's products and services generally." (*Id.* ¶¶ 22-27, 31-26; EULA § 12.3.1.)

The EULA contains an opt-out provision, which is highlighted in the bold disclaimer. (EULA intro.; *id.* § 12.6.) Under this provision, N.O. and J.O. could have opted out of the arbitration agreement by sending a written notice to Epic within 30 days of first agreeing to the EULA. (*Id.*) They did not do so. (Decl. ¶¶ 28, 37.) "By declining to opt out in accordance with the terms of the offer, plaintiff accepted defendant's offer to resolve any disputes through arbitration." *Dorward v. Macy's Inc.*, 2011 WL 2893118, at *10 (M.D. Fla. July 20, 2011).

Plaintiff does not appear to dispute that N.O. and J.O accepted the EULA and agreed to arbitrate their claims. Instead, Plaintiff alleges that "to the extent" N.O. and J.O. accepted the EULA as minors, no contract was formed. (Am. Compl. ¶ 150.) But

the fact that N.O. and J.O. are minors does not vitiate the *formation* of the arbitration agreement; it affects only whether such agreement may later be *enforced*. *See, e.g.*, *Dunn*, No. 23-cv-00224, slip op. at 6 (granting Epic's motion to compel arbitration because agreements with minors are "not void but voidable"); *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 934 (11th Cir. 2021) (agreements that "are merely voidable" are "effective unless and until they are challenged"); *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 254-55 (2017) (contrasting rules "finding arbitration contracts invalid because improperly formed"—i.e., "what it takes to enter into" an arbitration agreement—and rules "refusing to enforce those agreements once properly made"). There is thus no question that N.O. and J.O. entered into an agreement to arbitrate any dispute with Epic concerning their playing Fortnite.

## II.   The EULA Delegates Threshold Issues of Arbitrability to the Arbitrator

Although all claims asserted against Epic plainly fall within the EULA's ambit, the Court need not (and should not) reach that question because the EULA delegates the resolution of threshold issues of arbitrability to the arbitrator. (EULA § 12.3.1 ("You and Epic agree that whether a dispute is subject to arbitration under this Agreement will be determined by the arbitrator rather than a court.").) The EULA further provides that such delegation extends to "the validity, enforceability, [and] scope" of the arbitration agreement itself. (*Id.*) Because the EULA clearly and unmistakably delegates arbitrability to the arbitrator, the arbitrator—and not the

Court—must decide those threshold issues. *Attix*, 35 F.4th at 1295 ("parties are free to have an arbitrator decide their threshold disputes" concerning the "enforceability, scope, or applicability of the parties' agreement to arbitrate their claims" (internal quotation marks omitted)).

Plaintiff cannot avoid arbitration because Plaintiff alleges that N.O. and J.O. disaffirm the EULA. (Am. Compl. ¶ 150 (alleging any agreement N.O. and J.O. made "has since been made voided by virtue of . . . the power of disaffirmance").) The Eleventh Circuit has held that the distinction between void and voidable agreements "is . . . crucial to determining whether a contract exists for purposes of arbitration." *Solymar Invs., Ltd.*, 672 F.3d at 994 n.13. As discussed above, agreements entered into by minors are "not void but only voidable." *Orange Motors of Miami*, 227 So. 2d at 718. Thus, "the issue of disaffirmation does not relate to contract formation; rather, it goes to whether the [EULA] is enforceable, an issue that the parties delegated to an arbitrator." *N.A. v. Nintendo of Am. Inc.*, 2023 WL 8587628, at *4 (N.D. Cal. Dec. 11, 2023); *see also K.F.C.*, 29 F.4th at 838-39 ("As long as state law permits a child to ratify a contract, youth must be a defense rather than an obstacle to a contract's formation, and as a defense it goes to the arbitrator."); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883-84 (6th Cir. 2021) (compelling minors to arbitrate their claims because "plaintiffs' infancy argument does not concern the formation or

existence of a contract" and instead was "a matter of enforceability covered under the delegation provision").[5]

N.O. and J.O.'s purported disaffirmation of the EULA goes to the validity and enforceability of the contract, not its formation. Because the EULA expressly delegates such issues to the arbitrator, Epic respectfully requests that the Court grant Epic's motion to compel arbitration.

## III.   The EULA's Arbitration Agreement Is Valid and Enforceable Because Neither N.O. Nor J.O. Can Disaffirm the Contract

Even if the Court were to reach questions of validity and enforceability (as precedent consistently holds it should not), the EULA is enforceable. Although the Amended Complaint alleges that N.O. and J.O. disaffirm the EULA (Am. Compl. ¶ 150), their purported disaffirmance is ineffective.

---

[5] Case law across the country is in accord. *See, e.g.*, *A.C. by & through Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *4 (W.D. Wash. Apr. 29, 2021) (granting motion to compel arbitration because minor's disaffirmation "does not relate to contract formation"); *Ingram v. Neutron Holdings, Inc.*, 467 F. Supp. 3d 575, 581 (M.D. Tenn. 2020) (granting motion to compel arbitration because "minor's repudiation of a contract raises a question of arbitrability"); *Kuznik v. Hooters of Am., LLC*, 2020 WL 5983879, at *3-5 (C.D. Ill. Oct. 8, 2020) (finding "arguments regarding the voidability of the Agreement due to minority" are questions of "arbitrability"); *J.A. through Allen v. Microsoft Corp.*, 2021 WL 1723454, at *9 (W.D. Wash. Apr. 2, 2021), *report and recommendation adopted*, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021) (finding that "the issue of disaffirmance may not be determined by the Court" because it is "an arbitrability issue to be decided by the arbitrator"); *Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 355 (S.D.N.Y. 2020) (granting motion to compel arbitration notwithstanding minor's disaffirmation because "[c]ontracts signed by minors are voidable, not void").

It is long settled that "the shield of infancy should not be turned into a sword with which to injure those dealing with them in good faith." *Off the Wall & Gameroom LLC*, 301 So. 3d at 284 (cleaned up); *accord* 1 Farnsworth on Contracts § 4.5 (3rd ed. 2004); *Gillis v. Whitley's Disc. Auto Sales, Inc.*, 319 S.E.2d 661, 667 (N.C. App. 1984) (when a minor disaffirms a contract, he "is not entitled to a windfall"). For that reason, "although a contract of a minor is voidable at the option of the minor, the courts will not permit a minor or his personal representative to revoke in part and affirm in part." *Hunter*, 131 So. 2d at 210; *accord E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) ("[M]inors, if they would disaffirm a contract, must disaffirm the entire contract, not just the irksome portions." (internal quotation marks omitted)). Applying these principles, a prerequisite to valid disaffirmance is that the minor cease obtaining the benefits of the agreement. *See* 5 Williston on Contracts § 9:14 (4th ed.) ("If an infant enters into any contract subject to conditions or stipulations, the minor cannot take the benefit of the contract without the burden of the conditions or stipulations.").

Here, the Amended Complaint alleges that N.O. and J.O. continue to play Fortnite. (*See* Am. Compl. ¶¶ 404, 415 (alleging that their "use" is "compulsive" and they are "incapable of restraining themselves" from playing Fortnite). Moreover, Epic's records reflect that N.O. and J.O. continued to play Fortnite after the Amended Complaint was filed, including as recently as October 2024. (Decl. ¶ 19.) N.O. and J.O.

- 15 -

thus continue to retain the benefits of the EULA (i.e., access to Fortnite). Courts routinely reject minors' attempts to disaffirm a contract when they continue to accept the counterparty's continued services. *See*, *e.g.*, *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015) ("By continuing to use facebook.com after bringing their action, Plaintiffs manifested an intention not to disaffirm the contract."); *E.K.D. ex rel. Dawes*, 885 F. Supp. 2d at 899 (rejecting minors' attempt to disaffirm Facebook's terms of service because they continued to use Facebook); *Baker v. adidas Am., Inc.*, 2008 WL 11429938, at *5-6 (E.D.N.C. Mar. 5, 2008), *aff'd*, 335 F. App'x 356 (4th Cir. 2009) (rejecting minor's attempt to avoid contract because minor continued to accept benefits under the agreement after reaching the age of majority); *see also Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020) (requiring minor to have stopped playing *Fortnite* to disaffirm Epic's terms of service); *R.A. v. Epic Games, Inc.*, 2019 WL 6792801, at *7 (C.D. Cal. July 30, 2019) (same).

In the Amended Complaint, Plaintiff alleges that N.O. and J.O.'s "continued use of [Fortnite]" is "compulsive and due to . . . disordered compulsion and addiction . . . and does not serve as an affirmation of any contract." (Am. Compl. ¶ 151.) But the law simply does not permit a minor to disaffirm a contract yet retain its benefits as N.O. and J.O. do here, regardless of the alleged reason for seeking the contract's benefits. While counterparties accept the risk that minors may disaffirm their agreements, they do so based on longstanding principles that disaffirmation results in complete

rescission.[6] Having eschewed that option, N.O. and J.O. cannot disaffirm the EULA, and their claims are therefore subject to arbitration.

## IV.    The Court Should Stay These Proceedings Pending Arbitration

Section 3 of the FAA requires a district court to stay litigation if the action involves an issue referable to arbitration. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009). Because N.O. and J.O. agreed to arbitrate disputes with Epic, those claims are arbitrable in their entirety and the case must be stayed as to them.

The case should also be stayed as to the derivative claims of Ramona Orellana. Section 3 of the FAA empowers courts "to stay proceedings pending the completion of arbitration" when "the determination of factual and legal issues related to the claims brought against the nonsignatories . . . would be the subject of an arbitration proceeding between signatories to the arbitration agreement." *Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347-48 (5th Cir. 2002) (staying proceedings under Section 3 when "suit against a nonsignatory is based upon the same operative facts and is inherently inseparable from the claims against a signatory"); *see also Klay*, 389 F.3d at 1204 ("When confronted with litigants advancing both arbitrable and nonarbitrable claims,

---

[6] Sound policy reasons justify the rule that a minor cannot selectively disaffirm. To allow that would be to let parties escape the burdens of contracts while accepting the benefits. This is precisely why, in *Hunter*, the court refused to permit the minor's representative to selectively disaffirm only portions of the minor's insurance policy. 131 So. 2d at 210 ("The administratrix cannot revoke the change of beneficiary and still enforce other terms of the same contract.").

- 17 -

however, courts have discretion to stay nonarbitrable claims. . . . Crucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision."). Because the claims Plaintiff brings on her own behalf and on behalf of N.O. and J.O. are inseparable, the Court should stay these proceedings as to Epic pending arbitration.

## **CONCLUSION**

N.O. and J.O. both agreed with Epic to send their disputes to arbitration. Plaintiff now attempts to use N.O. and J.O.'s youth as a sword, rather than a shield, by reaping the benefits of their agreements with Epic (continued game play) while simultaneously attempting to avoid their agreements to arbitrate. The Court should compel N.O. and J.O. to arbitrate all claims under the EULA and stay this action while that arbitration is pending.

Dated: October 15, 2024                    Respectfully submitted,

                                          /s/ Ken Abele
                                          KEN ABELE, Florida Bar No. 0254370
                                          JONATHAN HAYES
                                          Florida Bar No. 119193
                                          LUKE FORSTHOEFEL
                                          Florida Bar No. 1025400
                                          Ausley McMullen
                                          P. O. Box 391
                                          Tallahassee, Florida   32302
                                          (850) 224-9115
                                          (850) 222-7560 FAX
                                          kabele@ausley.com
                                          jhayes@ausley.com
                                          lforsthoefel@ausley.com
                                          jtofte@ausley.com

                                          - AND -

                                          **HUESTON HENNIGAN LLP**
                                          Moez M. Kaba*
                                          Allison L. Libeu*
                                          Padraic Foran*
                                          523 West 6th St., Suite 400
                                          Los Angeles, California 90014
                                          (213) 788-4340
                                          Email:        mkaba@hueston.com
                                                        alibeu@hueston.com
                                                        pforan@hueston.com

                                          Adam Minchew*
                                          1 Little West 12th St.
                                          New York, New York 10014
                                          (646) 930-4046
                                          Email:        aminchew@hueston.com

                                          * Admitted *pro hac vice*

                                          *Counsel for Defendant Epic Games, Inc.*

- 19 -

## LOCAL RULE 3.1(g) CERTIFICATION

Epic has met and conferred with Plaintiff pursuant to Local Rule 3.01(g). The Parties do not agree on the resolution of all or part of the motion. The conference occurred by email exchange.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 15, 2024, the foregoing document was electronically served on all counsel of record via the Court's CM/ECF system.

/s/ Ken Abele
Counsel for Defendant Epic Games, Inc.